# EXHBIT 1

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Global Safety Textiles Holdings LLC, <u>et al.</u>,[1] | Case No. 09-12234 (KG) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. _____** |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN
POSTPETITION SECURED FINANCING; (II) MODIFYING THE AUTOMATIC
STAY; AND (III) AMENDING PRIOR CASH COLLATERAL ORDER**

Upon the motion, dated August 27, 2009 (the "**Motion**"), of Global Safety Textiles

Holdings LLC ("**Safety Holdings**") and its debtor affiliates (collectively, the "**Debtors**"), each

as a debtor and debtor-in-possession, in the above-captioned Chapter 11 cases (the "**Cases**"),

commenced on June 30, 2009 (the "**Petition Date**"), for a final order under sections 105, 361,

362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States

Code, 11 U.S.C. §§ 101, <u>et seq.</u> (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001

and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"),

seeking:

(I)    authorization for (a) Safety Holdings to obtain up to $5,000,000 in
principal amount of postpetition financing (the "**DIP Financing**") on the terms and
conditions set forth in this Order and the Debtor-in-Possession Credit Agreement
substantially in the form attached hereto as <u>Exhibit A</u> (as hereafter amended,
supplemented or otherwise modified from time to time in accordance with the terms

---

[1] The Debtors are comprised of the following nine entities (with the last four digits of their respective taxpayer identification numbers, if any, in parentheses): Global Safety Textiles Holdings LLC (1938), GST ASCI Holdings Asia Pacific LLC (7107), GST ASCI Holdings Europe, Inc. (7081), GST ASCI Holdings Europe II LLC (7081), GST ASCI Holdings Mexico, Inc. (7083), GST Automotive Safety Components International, Inc. (1750), Global Safety Textiles LLC (3442), Global Safety Textiles Acquisition GmbH and GST Widefabric International GmbH. The address for each of the Debtors is 804 Green Valley Road, Suite 300, Greensboro, North Carolina 27408.

hereof and thereof, the "**DIP Agreement**";[2] together with all agreements, documents and instruments delivered or executed in connection herewith or therewith, including, without limitation, the Budget (a copy of which is attached hereto as <u>Exhibit B</u>), in each case as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Documents**"), among the borrower, Safety Holdings (the "**Borrower**"), and as guarantors, each of the domestic Debtors (collectively, the "**Guarantors**" and together with the Borrower, the "**Debtor Parties**"), the lenders from time to time party thereto (collectively, the "**DIP Lenders**") and Nexbank, SSB (in its individual capacity, "**Nexbank**"), as administrative agent and collateral agent for itself and the DIP Lenders (in such capacity, the "**DIP Agent**"), and (b) each of the Guarantors to guaranty the Borrower's obligations in respect of the DIP Financing;

(II)     authorization for the Debtor Parties to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith; and

(III)     authorization to amend the Cash Collateral Order (as defined in <u>paragraph 3</u> below);

The hearing on the Motion (the "Hearing") having been held by this Court on September 14, 2009, and upon the record made by the Debtors at the Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

---

[2] Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the DIP Agreement or the Cash Collateral Order (as defined in <u>paragraph 3</u> below) as applicable.  In the event that a capitalized term is defined in both the DIP Agreement and the Cash Collateral Order, then the DIP Agreement shall control and govern for purposes of this Order.

DB02:7715199.3
NY\1561240.7

067998.1001

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1.    *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors (the "**Committee**") was appointed in the Cases on July 22, 2009.

2.    *Notice*.  On August 27, 2009, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy Rules of this Court, the Debtors provided notice of the Motion and the Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated below: (i) the Office of the United States Trustee for this District (the "**U.S. Trustee**"); (ii) counsel to the DIP Agent; (iii) counsel to the Prepetition Agent; (iv) counsel to the Committee; (v) all other known parties with liens of record on assets of the Debtors as of the Petition Date and (vi) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice prior to the date hereof (collectively, the "**Notice Parties**"). Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and no further notice relating to this proceeding is necessary or required.

3.    *Debtors' Stipulations*.  On July 30, 2009, this Court entered the Final Order (I) Authorizing the Use of Prepetition Lenders' Cash Collateral Under 11 U.S.C. § 363, (II)

DB02:7715199.3
NY\1561240.7

067998.1001

Granting Adequate Protection Under 11 U.S.C. §§ 361, 362 and 363 and (III) Modifying the Automatic Stay (D.I. 138) (the "**Cash Collateral Order**").  All terms and conditions of the Cash Collateral Order are hereby reaffirmed and remain in full force and effect except to the extent such terms and conditions are expressly modified, altered or amended herein.

4. *Findings Regarding The DIP Financing.*

(a) *Good Cause*.  Good cause has been shown for the entry of this Order.  The Debtors have an immediate need to obtain the DIP Financing in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes of the Debtors.  The DIP Financing is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.

(b) *No Alternative Sources of Financing*.  The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, this Order and the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting the DIP Liens (as defined in paragraph 7 below) and the Super-Priority Claims (as defined in paragraph 8 below), in each case on the terms and conditions set forth in this Order and the DIP Documents.

(c) *Reasonably Equivalent Value*.  The terms of the DIP Financing pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.  The Debtors require additional financing under the DIP Financing in order to

4

satisfy their postpetition liquidity needs. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Agent and the DIP Lenders pursuant to the terms of this Order and the DIP Documents represents the best financing presently available to the Debtors.

(d) *Good Faith*. The DIP Documents have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders and their respective affiliates. All DIP Obligations (as defined in paragraph 5(a) below) have been, and shall be deemed to have been, extended by the DIP Agent and the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to, and are hereby granted, the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is stayed, vacated, reversed, amended or modified on appeal or otherwise.

(e) *Budget*. The Budget is an integral part of this Order and has been relied upon by the DIP Agent and the DIP Lenders in deciding to consent, or not otherwise object, to entry of this Order.

(f) *Entry of Order*. The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief set forth in this Order, the Debtors' estates will be irreparably harmed. Consummation of the DIP Financing in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

5. *Authorization Of The DIP Financing And The DIP Documents*.

DB02:7715199.3
NY\1561240.7

067998.1001

(a)     *Maximum Amount*.  The terms and conditions of the DIP Agreement are hereby approved on a final basis.  The Debtor Parties are hereby authorized to enter into and perform the transactions contemplated by this Order and the DIP Documents and, in the case of the Borrower, to borrow under the DIP Agreement up to an aggregate principal amount of $5,000,000 of the Loans (the "**Maximum Amount**") for working capital and other general corporate purposes of the Debtor Parties pursuant and subject to the terms and conditions of this Order and the DIP Documents.  For purposes of this Order, the term "**DIP Obligations**" shall mean and include all amounts owing under the DIP Agreement or other DIP Documents (including, without limitation, the Alternative Transaction Fee (as described in paragraph 25 below) and all "Obligations" as defined in the DIP Agreement) and shall include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees, costs and expenses that are chargeable or reimbursable by the DIP Agent or the DIP Lenders under this Order, the DIP Agreement or other DIP Documents), and any indemnity claims, in each case whether contingent or otherwise and whether arising before or after the Petition Date.

(b)     *Further Assurances*.  In furtherance of the foregoing and without further notice, motion or application to, order of, or hearing before, this Court, each Debtor Party is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for the Debtor Parties' performance of their obligations under the DIP Documents or this Order, including without limitation:

(i)     the execution and delivery of, and performance of the transactions contemplated by, the DIP Documents;

DB02:7715199.3
NY\1561240.7

067998.1001

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, including any such matters respecting the Budget, in each case in such form as the Debtors, the DIP Agent and the requisite DIP Lenders may agree in writing, and no further approval of this Court shall be required for such amendments, waivers, consents or other modifications to and under the DIP Documents for which no objection is made as set forth in the proviso of this paragraph; provided, however, that a copy of any such amendment, waiver, consent or other modification (other than in respect of the Budget) shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and the counsel to the Committee, each of whom shall have seven (7) business days from the date of such notice within which to object in writing to any such amendment, waiver, consent or modification. For the avoidance of doubt, if any party timely objects to any proposed amendment, waiver, consent or modification, then such amendment, waiver, consent or modification shall only be permitted pursuant to an order of this Court;

(iii)   the payment to the DIP Agent and the DIP Lenders, as the case may be, of the DIP Obligations as and when due as set forth in this Order or the DIP Documents; and

(iv)   the prompt performance of all other acts required under or in connection with this Order or the DIP Documents, including, without limitation, prompt delivery to the DIP Agent of such reporting and financial information and access to the Debtors' books and records, in each case, as may be reasonably requested by the DIP Agent from time to time.

(c)    *No Impairment*. Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtor Parties, be enforceable against the Debtor Parties thereto in accordance with the terms of this Order and the DIP Documents and shall be incorporated by reference as part of this Order. No obligation or liability owed, or payment, transfer or grant of security, to the DIP Agent or any DIP Lender under this Order or any DIP Document shall be stayed, restrained, impaired, disgorged, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy

DB02:7715199.3
NY\1561240.7

067998.1001

law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim, whether in the Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if any of the Cases are converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the "**Successor Case**"). The DIP Obligations, once paid by any Debtor, shall be non-refundable.

(d) *Interest, Fees, Costs and Expenses*. The DIP Obligations shall bear interest at the rates (including at the default rate after the occurrence and during the continuance of an Event of Default under the DIP Documents), and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Order and the DIP Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court. The Debtor Parties shall pay on demand all reasonable fees, costs, expenses and other charges payable under the terms of the DIP Documents, in each case whether or not the DIP Agreement and transactions contemplated therein are consummated and whether or not such amounts are included in the Budget. None of such fees, costs and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses) and no recipient of any such payment shall be required to file any interim or final fee application. The Debtor Parties shall pay the fees, costs and expenses provided for in this paragraph promptly after the invoices for such fees, costs and expenses shall have been submitted to the Debtors (which invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential

information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and the Debtors shall promptly provide copies of such invoices to the respective counsel to the Committee and the U.S. Trustee. The Committee and the U.S. Trustee may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by the DIP Agent; provided that, any such objection shall be waived and barred unless it is filed with this Court and served on counsel to the DIP Agent no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice; provided further, that the Debtor Parties shall promptly pay all reasonable fees, costs and expenses not subject to objection by the Committee or the U.S. Trustee. The Debtor Parties shall indemnify the DIP Agent and the DIP Lenders (and other applicable parties) to the extent set forth in the DIP Documents.

(e) *Authorized Signatories*. The signature of Anthony J. Forman, an officer of the Debtors (or his respective designee), appearing on any one or more of the DIP Documents shall be sufficient to bind each of the Debtors and their estates thereto. No board of directors, member, shareholder or other approval or resolutions shall be necessary or required to consummate, effect or validate the transactions contemplated in the DIP Documents or in this Order.

6. *Permitted Use*.

(a) *Generally*. Notwithstanding anything in this Order to the contrary, the Debtor Parties may use the Cash Collateral and proceeds of the DIP Financing, and incur DIP Obligations, solely in accordance with and pursuant to the financial covenants, availability formulae and other terms and conditions set forth in the DIP Documents, the Cash Collateral Order and this Order, including, without limitation, pursuant to the Budget, but in all events only

until the occurrence of the Termination Date under the DIP Agreement and regardless of whether the Debtors have expended the entire amount of Cash Collateral or proceeds of the DIP Financing permitted by the terms of this Order prior to the Termination Date (but, in all cases, unless otherwise agreed in writing by the DIP Agent); provided, however, that upon entry of this Order, the Debtor Parties are hereby authorized to modify the existing cash management system set forth in the Final Order (I) Approving the Continued Use of the Debtors' Cash Management System and Bank Accounts and (II) Granting Related Relief (D.I. 132) in accordance with the Cash Management System described in Schedule 2.1(d) of the DIP Agreement. Notwithstanding the foregoing, if the DIP Agent or the DIP Lenders in their respective sole discretion advance funds or provide other extensions of credit to the Debtor Parties in excess of any financial covenants, availability formulae, or other terms and conditions (or any other limitations in the DIP Documents, including, without limitation, the Budget), such advances and extensions of credit shall be entitled to, and are hereby granted, the rights, priorities, benefits and protections of this Order; provided that the principal amount of the Loans shall not exceed the Maximum Amount without further order of this Court.

(b) *No Duty to Monitor Compliance*. The DIP Agent, DIP Lenders, the Prepetition Agent, the Security Agent and the Prepetition Lenders may assume the Debtor Parties will comply with this Order, the Budget and the DIP Documents and shall not (i) have any obligation with respect to the Debtors' use of Cash Collateral or the use of proceeds of the DIP Financing; (ii) be obligated to ensure or monitor the Debtor Parties' compliance with any financial covenants, formulae, or other terms and conditions of this Order or any DIP Document or (iii) be obligated to pay (directly or indirectly from the Cash Collateral or DIP Collateral) any expenses incurred or authorized to be incurred pursuant to this Order or any DIP Document or be

obligated to ensure or monitor that sufficient Cash Collateral or proceeds of DIP Financing exists to pay such expenses.

      7.    *DIP Liens*.

      *(a)*    *Generally*.    Notwithstanding anything to the contrary in the Cash Collateral Order, as security for the full and timely repayment of all of the DIP Obligations, the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders, is hereby granted by each Debtor Party, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, unavoidable and fully perfected first priority, senior priming security interests and liens (collectively, the "**DIP Liens**") in and upon all of the Prepetition Collateral and all other prepetition and postpetition real and personal, tangible and intangible property and assets of each Debtor Party of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising, including, without limitation, all cash (including all Cash Collateral, wherever held), cash equivalents, bank accounts (including the Collateral Account and Carve-Out Account), accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, one hundred percent (100%) of the capital stock of each such Debtor Party's direct and indirect domestic subsidiaries, sixty-five percent (65%) of the capital stock of each such Debtor Party's direct and indirect foreign subsidiaries, but with respect to such stock of each such Debtor Party's direct and indirect foreign subsidiaries, only to the extent that such stock constitutes Prepetition Collateral, insurance policies, all inter-company notes held by such Debtor Party, trademarks, trade names, licenses, rights to payment including tax refund claims, and causes of action, including any

DB02:7715199.3
NY\1561240.7

067998.1001

actions under Chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**"), and the proceeds, products, offspring, rents and profits of all of the foregoing, including insurance proceeds and Avoidance Action proceeds (all of the foregoing, together with the Prepetition Collateral, the "**DIP Collateral**"). Notwithstanding the foregoing, the DIP Agent and DIP Lenders shall not seek recourse to the Avoidance Action proceeds until such time as substantially all other assets constituting DIP Collateral have been applied to the DIP Obligations and the DIP Obligations thereafter remain unsatisfied.

(b)     *Other Priority Matters*.  Notwithstanding anything in the Cash Collateral Order to the contrary, the DIP Liens: (a) shall, pursuant to section 364(c)(2) of the Bankruptcy Code, constitute first priority security interests in and liens on all DIP Collateral that is not otherwise subject to any lien or security interest that (i) is permitted under the DIP Documents, (ii) was perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), (iii) is not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (iv) is senior in priority to the liens of the Prepetition Agent, the Security Agent, and Priority Prepetition Lenders under applicable law and after giving effect to any lien release, subordination or inter-creditor agreements (such senior liens and security interests, the "**Prior Liens**"); (b) shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be senior to and prime (i) the liens of the Prepetition Agent, the Security Agent and the Prepetition Lenders, and (ii) the Adequate Protection Liens (the liens described in clauses (i) and (ii) above, collectively, the "**Primed Liens**"); and (c) shall, pursuant to section 364(c)(3) of the Bankruptcy Code, be immediately junior in priority to any and all Prior Liens (other than the Primed Liens) on or in the DIP Collateral, but the DIP Liens shall be subject to the Carve-Out.  Other than the Carve-

DB02:7715199.3
NY\1561240.7
067998.1001

Out and Prior Liens, the DIP Liens shall at all times be senior to the following: (i) the rights of any Debtor and any successor trustee or estate representative in the Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Successor Case; (ii) any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, and (iii) any security interest or lien which is either (x) avoided or disallowed or otherwise preserved for the benefit of any Debtor's estate under section 551 or any other provision of the Bankruptcy Code, or (y) junior or otherwise subordinate to the liens or security interests of the Prepetition Agent, the Security Agent or the Prepetition Lenders. The DIP Liens shall, as of the date hereof, be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Cases and any Successor Case, in each case without the necessity of the execution or delivery by the Debtor Parties (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent or any DIP Lenders of any DIP Collateral. Other than the Carve-Out and Prior Liens, no other liens or security interests, whether for postpetition financing, adequate protection or otherwise, whether arising pursuant to section 363 or 364 of the Bankruptcy Code or otherwise, shall be senior or equal to or *pari passu* with the DIP Liens in these Cases or any Successor Case without the express written consent of the DIP Agent given in accordance with the DIP Agreement (which consent may be withheld in its sole discretion). Notwithstanding anything herein to the contrary, all parties retain and reserve all their rights to dispute the validity, priority, enforceability and perfection of the Prior Liens.

8. *Super-Priority Claims.* Notwithstanding anything to the contrary in the Cash Collateral Order, in addition to the DIP Liens, the DIP Agent and DIP Lenders are hereby

DB02:7715199.3
NY\1561240.7

067998.1001

granted, for all DIP Obligations, an allowed super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code (the "**Super-Priority Claims**") against each Debtor Parties and its respective estate. Except for the Carve-Out, notwithstanding anything to the contrary in the Cash Collateral Order, the Super-Priority Claims shall have priority over all other costs and expenses of administration of any kind (and no cost or expense of administration shall be senior to, equal to, or *pari passu* with, the Super-Priority Claims), including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise, in each case whether incurred in these Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise, including, without limitation, the 507(b) Claim under the Cash Collateral Order, and whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The Super-Priority Claims shall at all times be senior to any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor. The Super-Priority Claims shall, as of the date hereof, be deemed legal, valid, binding, and enforceable claims and expenses against the Debtors and their estates, and not subject to subordination, impairment or avoidance, for all purposes in the Cases and any Successor Case. Subject to the Carve-Out, the Super-Priority Claims shall be payable from, and have recourse to, any and all property and assets of each Debtor, including, without limitation, the Avoidance Actions and the proceeds thereof in accordance with this Order.

9. *Modification of Automatic Stay.*

(a) Except as set forth in sub-paragraph (b) of this paragraph, which sub-paragraph exclusively governs the applicability of the automatic stay to any action by the DIP

DB02:7715199.3
NY\1561240.7
067998.1001

Agent or DIP Lenders to foreclose on its security interests in and liens on any DIP Collateral granted hereunder, the Court hereby orders that (x) the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby vacated as to the DIP Agent and DIP Lenders to permit such parties to perform the actions described in or permitted by this Order, in each case without further notice, application or motion to, or order from the Court, and (y) neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit such party's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable). Consistent with the foregoing sentence, the DIP Agent and DIP Lenders are hereby granted leave to (i) receive and apply payments of the DIP Obligations and proceeds of the DIP Collateral, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral provided by this Order, (iii) charge and collect any interest (including at the default rate to the extent authorized herein), fees, costs and other expenses accruing at any time under this Order or the DIP Documents to the extent authorized herein, (iv) give the Debtor Parties any notice provided for in this Order or the DIP Documents and (v) upon the Termination Date (as defined in the DIP Agreement), and in each case without further notice, motion or application to, order of, or hearing before, this Court: (A) terminate the DIP Agreement and/or the other DIP Documents, (B) cease making Loans and/or suspend or terminate its lending commitments to the Debtor Parties, (C) accelerate any or all of the DIP Obligations and declare such DIP Obligations immediately due and payable in cash, and/or (D) revoke the Debtor Parties' right, if any, to use the DIP Collateral and proceeds of the DIP Collateral and/or proceeds of the DIP Financing.

DB02:7715199.3
NY\1561240.7

067998.1001

*(b)* Upon the Termination Date (as defined in the DIP Agreement), and after obtaining relief from this Court from the automatic stay upon hearing and seven (7) business days prior notice to respective counsel to the Debtors, Committee and the U.S. Trustee, the DIP Agent and DIP Lenders shall be entitled to foreclose or otherwise enforce their security interests in and liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies against the DIP Collateral under the DIP Documents, this Order or applicable law in seeking to recover payment of the DIP Obligations. The Debtors acknowledge and agree that the only issue to be determined and decided at such Court hearing is whether the Termination Date has occurred and is continuing.

10. *Waiver of Section 506(c) Surcharge*. Except to the extent of the Carve-Out, no expenses of administration of the Cases or any Successor Case, shall be charged against or recovered from the DIP Collateral under section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, which consent may be withheld in the sole discretion of the DIP Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent or the DIP Lenders (including approval of any Budget).

11. *No Lien Alteration*. Subject to paragraph 7 of this Order, the receipt by the Debtors of any Cash Collateral or other proceeds of DIP Collateral shall not, and shall not be deemed to, affect, alter or otherwise modify the validity, priority or perfection of any liens in and/or claims against such Cash Collateral or other proceeds and such liens and claims shall continue to exist in and against such Cash Collateral or other proceeds in the possession of the Debtors, in each case with the same validity, priority and perfection as existed immediately prior to such receipt by the Debtors.

16

12. *Carve-Out*.

(a) *Generally*. For purposes of this Order, "**Carve-Out**" means (i) the unpaid fees due and payable to the Clerk of the Bankruptcy Court and of the Office of the United States Trustee under 28 U.S.C. § 1930(a) and (ii) after the occurrence and during the continuance of an Event of Default under the DIP Agreement, the payment of allowed and unpaid professional fees and disbursements (except any such fees and disbursements incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Security Agent or the Prepetition Lenders) incurred after the occurrence of an Event of Default by the Debtors and the Creditors' Committee (collectively, with the entities in clause (i) of this paragraph, the "**Carve-Out Beneficiaries**") in an aggregate amount not in excess of $200,000; *provided* (x) that the dollar limitation in this clause on fees and expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid before the occurrence of an Event of Default in respect of which the Carve-Out is invoked or by any fees, expenses, indemnities or other amounts paid to the DIP Agent, the DIP Lenders, the Prepetition Agent, the Security Agent, the Prepetition Lenders or their respective attorneys and agents, and (y) that the dollar limitation in this clause on fees and expenses shall not be reduced by the Debtors' and the Creditors' Committee's claims for unpaid fees and expenses which were incurred in accordance with the Budget and after the Petition Date but before an Event of Default under the DIP Agreement; *provided further that*, in each case, such fees and expenses of the Debtors and the Creditors' Committee are in accordance with the Budget and are ultimately allowed on a final basis by this Court pursuant to sections 330 and 331 of the Bankruptcy Code and are not excluded from the Carve-Out. Nothing herein shall be construed to prejudice any

17

objection to any of the fees, expenses, reimbursement or compensation. The rights, remedies, and protections provided to professionals under the Carve-Out shall survive the Termination Date (as defined in the DIP Agreement) and notwithstanding the occurrence of such Termination Date, the Carve-Out shall remain in full force and effect.

*(b) Funding of Carve-Out*. To the extent not already funded pursuant to the Cash Collateral Order, $200,000 of the Carve-Out shall be prefunded in a separate account established by the Debtors and such account shall be the sole source of recovery for the fees and expenses of the Carve-Out Beneficiaries incurred after the occurrence of and during the continuance of an Event of Default (the "**Carve-Out Account**"). The funds in the separate account are the Cash Collateral of the Prepetition Lenders, subject to their valid, perfected, and enforceable liens, which liens are junior only to the contingent interests of the Carve-Out Beneficiaries and the DIP Liens. Subject to paragraphs 7 and 8 of this Order, all funds in the Carve-Out Account shall be immediately payable to the Security Agent, unless the Security Agent shall otherwise agree in its sole discretion in writing, on the earlier of: (i) the effective date of any plan of reorganization and (ii) the payment of fees and expenses to each entity with an interest in the Carve-Out Account pursuant to a Final Order under § 330 of the Bankruptcy Code. If the Cases are converted to cases under Chapter 7 of the Bankruptcy Code, the interest of any interim and permanent trustee in the Carve-Out Account shall be subject to the DIP Liens, the Super-Priority Claims and the liens, claims, and encumbrances of the Security Agent as stipulated or otherwise determined pursuant to this Order or the Cash Collateral Order, as applicable. For the avoidance of doubt, the Carve-Out provided in this Order is and shall be in lieu of, and not in addition to or cumulative of, the Carve-Out provided in the Cash Collateral Order.

DB02:7715199.3
NY\1561240.7

067998.1001

13.     _Reservation of Rights of the Prepetition Lenders_.  Except as expressly provided herein, nothing contained in this Order shall impair, prejudice or modify any rights, claims or defenses available in law or in equity to the Prepetition Agent and Security Agent on behalf of the Prepetition Lenders, including, without limitation, the right to (a) request conversion of any Case to a Chapter 7 case under the Bankruptcy Code, (b) seek to terminate the exclusive rights of the Debtors to file, and solicit acceptances to, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans of reorganization, and (c) seek relief from the automatic stay.  All such rights, claims and defenses, and the rights, objections and defenses of all parties in connection therewith, are hereby reserved.

14.     _Perfection Of DIP Liens_.

(a)     The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the date hereof without any further notice, act or action of or by any person or entity, and without the necessity of execution by the Debtor Parties, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents.  If the DIP Agent hereafter requests that the Debtor Parties execute and deliver to it any financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such party to be reasonably necessary or desirable to further evidence the perfection of the liens and security interests provided under this Order, then the Debtor Parties are hereby authorized and directed, at their sole cost and expense, to promptly execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Agent

DB02:7715199.3
NY\1561240.7

067998.1001

is authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded as of the date hereof, but with the priorities as set forth herein.

(b)     The DIP Agent may (in its sole discretion), but shall not be required to, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor Party has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of its interests in the DIP Collateral as of the date hereof, but with the priorities as set forth herein.

(c)     To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security interests and liens authorized or created under or in connection with this Order or the DIP Documents, or otherwise would impose filing or registration requirements or fees and charges with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court; provided that the DIP Agent may still take such steps as it desires to perfect its security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Order.

(d)     Except as otherwise expressly provided herein, notwithstanding anything to the contrary contained in any prepetition or postpetition agreement, contract, lease, document, note or instrument to which any Debtor Party is a party or under which any Debtor Party is obligated or bound, any provision therein that restricts, conditions, prohibits, limits or impairs in any way any Debtor Party from granting the DIP Agent and DIP Lenders the postpetition claims, security interests or liens upon any of its assets, properties or other DIP Collateral or otherwise

DB02:7715199.3
NY\1561240.7

067998.1001

entering into and complying with all of the terms, conditions and provisions of this Order and the DIP Documents shall be unenforceable against such Debtor Party, and therefore, shall not adversely affect the validity, priority, perfection or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to such parties pursuant to this Order and the DIP Documents.

15. _Preservation Of Rights Granted Under This Order; 364(e) Protection_.

(a) _Survival_. The provisions of this Order and any actions taken pursuant hereto: (a) shall survive the occurrence of the Termination Date (as defined in the DIP Agreement) and/or entry of any order: (i) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (ii) substantively consolidating any of the Debtors or their respective estates; (iii) dismissing or closing any of the Cases or (iv) confirming a plan of reorganization in any of the Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive any discharge as to the DIP Obligations); and (b) shall continue in full force and effect notwithstanding the occurrence of the Termination Date (as defined in the DIP Agreement) and/or entry of any such order. The claims, liens, and security interests granted pursuant to this Order shall maintain their priority, validity and perfection as provided by this Order until all of the DIP Obligations are indefeasibly paid in full in cash and discharged (and all lending commitments terminated under the DIP Financing) in accordance with the respective terms and conditions of this Order and the DIP Documents.

(b) _Section 364(e); Effect of Modification or Appeal_. Based on the findings set forth in this Order, in consideration for the financing provided under DIP Financing, the DIP Agent and the DIP Lenders are entitled to, and hereby are granted, the full rights, benefits, privileges and protections of, and provided by, section 364(e) of the Bankruptcy Code with

DB02:7715199.3
NY\1561240.7

067998.1001

respect to the DIP Obligations (and related liens, claims, rights, remedies and benefits) created or authorized by this Order in the event that this Order or any authorization or approval contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal. Any subsequent stay, modification, reversal, amendment or vacatur of this Order shall not alter, modify or affect the validity, priority, perfection or enforceability of any claim, lien, or security interest of the DIP Agent or the DIP Lenders authorized, created or granted pursuant to this Order and outstanding immediately prior to the actual receipt of written notice by the DIP Agent of the effective date of such stay, modification, reversal, amendment or vacatur. Notwithstanding any such stay, modification, reversal, amendment or vacatur, all obligations and other financial accommodations made or incurred pursuant to this Order, all DIP Obligations incurred pursuant hereto prior to the actual receipt of written notice by the DIP Agent of the effective date of such stay, modification, reversal, amendment or vacatur, shall be governed in all respects by the original provisions of this Order and the DIP Agent and the DIP Lenders shall be entitled to all of the rights, privileges, remedies, protections and benefits contained or granted in section 364(e) of the Bankruptcy Code, this Order, and the DIP Documents, including, without limitation, the DIP Liens and the Super-Priority Claims.

16. _Limited Nature_. The Prepetition Agent's, the Security Agent's and the Prepetition Lenders' failure to object to the priming of their liens by the DIP Liens is limited to the DIP Financing presently before this Court, with Nexbank as DIP Agent and a subset of the Prepetition Lenders as DIP Lenders, and shall not, and shall not be deemed to, extend to any other post-petition financing or to any modified version of the DIP Documents with any party other than Nexbank as DIP Agent. Furthermore, the consent of the Prepetition Agent, the Security Agent and the Prepetition Lenders to the Debtors' continued use of Cash Collateral and

DB02:7715199.3
NY\1561240.7
067998.1001

failure to object to the priming of their liens by the DIP Liens as provided in this Order does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Agent, the Security Agent and the Prepetition Lenders that their interests in the Prepetition Collateral are adequately protected pursuant to this Order or otherwise. Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Agent, the Security Agent or any Prepetition Lender are or will be adequately protected with respect to any non-consensual use of Cash Collateral or non-consensual priming of the liens of the Prepetition Agent, the Security Agent or the Prepetition Lenders.

17. _Section 364(d) Finding_. The security interests and liens granted pursuant to this Order to the DIP Agent, for the benefit of itself and the DIP Lenders, are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in any property of the Debtors' estates, and/or (ii) the holders of such security interests and liens have consented (or are deemed to have consented) to the security interests and priming liens granted pursuant to this Order to the DIP Agent for the benefit of itself and the DIP Lenders.

18. _Limitation On Use Of DIP Financing And DIP Collateral_. Notwithstanding anything herein to the contrary, except as provided for (a) the Committee in the Cash Collateral Order in connection with the $100,000 for investigating, but not preparing, initiating or prosecuting, any Challenge Claims against the Prepetition Agent or the Prepetition Lenders (the "**Investigation Amount**") and (b) the Debtors and the Committee in the Cash Collateral Order in connection with (i) the Prayer or (ii) a temporary restraining order, injunction or declaratory

23

judgment of a duration greater than 21 days that is in form and substance materially the same as the relief requested in the Prayer, no portion or proceeds of the DIP Financing, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (w) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of any amount due under the DIP Documents or the Prepetition Agreements, any security interests, liens or claims granted under this Order, the Cash Collateral Order, the DIP Documents or the Prepetition Agreements to secure such amounts; (x) asserting any claims, actions or causes of action against any of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Security Agent or the Prepetition Lenders or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (y) preventing, hindering or otherwise delaying any of the DIP Agent's, the DIP Lenders', the Prepetition Agent's, the Security Agent's or the Prepetition Lenders' assertion, enforcement or realization on their respective collateral in accordance with the terms and conditions of this Order or the Cash Collateral Order, as applicable; or (z) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent, the Security Agent or the Prepetition Lenders under this Order, the Cash Collateral Order, the DIP Documents or the Prepetition Agreements, as applicable, in each case without such party's prior written consent given in its sole discretion.    For the avoidance of doubt, the Investigation Amount provided in this Order is and shall be in lieu of, and not in addition to or cumulative of, such amount  provided in the Cash Collateral Order.

19.    *No Marshaling*.  In no event shall the DIP Agent or DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

24

20.     _No Implied Waiver_.  The failure, at any time or times hereafter, of the DIP Agent or DIP Lenders to require strict performance by the Debtors of any provision of this Order or the DIP Documents shall not waive, affect or diminish any right of such parties thereafter to demand strict compliance and performance therewith.  No delay on the part of any party in the exercise of any right or remedy under this Order or the DIP Documents shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.  None of the rights or remedies of any party under this Order, the Cash Collateral Order or the DIP Documents shall be deemed to have been amended, modified, suspended or waived unless such amendment, modification, suspension or waiver is in writing and signed by the party against whom such amendment, modification, suspension or waiver is sought.

21.     _Order Governs_.  In the event of any conflict between the provisions of this Order and the DIP Documents, the provisions of this Order shall control and govern to the extent of such conflict.  In the event of any conflict between the provisions of this Order and the Cash Collateral Order, the provisions of this Order shall control and govern to the extent of such conflict.

22.     _Successors and Assigns_.  The provisions of this Order and the DIP Documents shall, as applicable, be binding upon and inure to the benefit of the DIP Agent and DIP Lenders, and the Debtors and their respective estates, and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates, whether in the Cases or any Successor Case.

23.     _No Liability to Third Parties_.  In making decisions to advance loans to the Debtor Parties, in administering any loans, in permitting the Debtors to use Cash Collateral, in approving any budget or in taking any actions permitted by this Order or the DIP Documents, as

DB02:7715199.3
NY\1561240.7                                                                    067998.1001

applicable, the DIP Agent and DIP Lenders shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), and/or (ii) owe any fiduciary duty to any Debtor, its respective creditors or its respective estate, and their relationship with each Debtor shall not constitute or be deemed to constitute a joint venture or partnership with such Debtor.

24.    *Effectiveness*.  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order.  All objections to the entry of this Order have been withdrawn or overruled and the Motion is approved on a final basis on the terms and conditions set forth herein.  Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

25.    *Alternative Transaction Fee*.  The Alternative Transaction Fee is hereby approved.  The Alternative Transaction Fee, as set forth in that certain Commitment Letter, dated July 21, 2009, by and among Safety Holdings and Global Safety Textiles Acquisition GmbH, certain subsidiaries of Safety Holdings and the DIP Lenders party thereto, to be paid under the circumstances described therein to the DIP Lenders is an actual and necessary cost and expense of preserving the Debtors' estates and shall constitute part of the DIP Obligations.

26.    *Prepetition Subordination Agreements*.  Pursuant to section 510 of the Bankruptcy Code, any subordination or intercreditor agreements with respect to any Debtor is

DB02:7715199.3
NY\1561240.7

067998.1001

not, and shall not be deemed to be, amended, altered or otherwise modified solely as a result of the commencement of the Chapter 11 Cases, the entry of this Order or by the consummation of the transactions contemplated hereby

27. *Amendments to the Cash Collateral Order*. The Cash Collateral Order is hereby amended as follows:

(a) In the seventh line of paragraph 9(e), after the words "Cash Collateral," adding the clause "the imposition of liens senior to the liens of the Prepetition Agent, the Security Agent and the Prepetition Lenders";

(b) In the fifth line of paragraph 13, after the word "from", inserting "(w) the imposition of liens senior to the liens of the Prepetition Agent, the Security Agent and Prepetition Lenders,";

(c) At the end of subparagraph (j) of paragraph 19, deleting the word "and";

(d) At the end of subparagraph (k) of paragraph 19, deleting the period and replacing it with a semicolon followed by the word "and"; and

(e) After subparagraph (k) of paragraph 19, inserting the following subparagraph "(l) the occurrence and continuance of an Event of Default under that certain Debtor-in-Possession Credit Agreement, to be executed and delivered, among the borrower Safety Holdings, and as guarantors, each of the domestic Debtors, and the lenders from time to time party thereto and Nexbank, SSB, as administrative agent and collateral agent for itself and the lenders thereto."


Dated: September ____, 2009
        Wilmington, DE

_____
United States Bankruptcy Judge

DB02:7715199.3
NY\1561240.7

067998.1001

**Exhibit A**


**DIP Agreement**

**<u>Exhibit B</u>**


**Budget**